1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF WEST VIRGINIA

3    United States of America,
     ex rel., Louis Longo,
4               Plaintiffs,

5               VS.                    CIVIL ACTION NO.

6                                      5:19-cv-192

7    Wheeling Hospital, Inc.,
     R&V Associates, Ltd., and
8    Ronald L. Violi,

9               Defendants.

10                              - - -

11        Proceedings had in the motion hearing of the
     above-styled action on June 25, 2019, before Honorable John
12   Preston Bailey, District Judge, at Wheeling, West Virginia.

13                              - - -

14        APPEARANCES:

15        On Behalf of the Plaintiff, United States of America:
          Colin J. Callahan
16        Assistant United States Attorney
          United States Attorney's Office
17        700 Grant Street, Suite 4000
          Pittsburgh, PA  15219
18        412.894.7426

19        Greg T. Kinskey
          Assistant United States Attorney
20        United States Attorney's Office
          PO Box 591
21        Wheeling, WV  26003
          304.234.7755

22
          Rohith V. Srinivas
23        United States Department of Justice
          175 N St. NE
24        Washington, DC  20002
          202.307.6604

25   APPEARANCES CONTINUED ON NEXT PAGE

```
1     On behalf of the Plaintiff Louis Longo:

2         Sharon L. Potter
          Spilman, Thomas & Battle, PLLC
3         1223 Main Street
          Wheeling, WV  26003
4         304.230.6950

5         Jeffrey W. Dickstein
          Phillips & Cohen, LLP
6         200 South Biscayne Blvd.
          Miami, FL  33131
7         305.372.5200

8         Amy L. Easton
          Phillips & Cohen, LLP
9         2000 Massachusetts Avenue NW, Suite 1000
          Washington, D.C.   20036
10        202.833.4567

11        On Behalf of the Defendant Wheeling Hospital:

12        Marc B. Chernenko
          William E. Watson & Associates
13        P.O. Box 111
          Wellsburg, WV  26070
14        304.737.0881

15        Meena T. Sinfelt
          Barnes & Thornburg, LLP
16        1717 Pennsylvania Avenue N.W.
          Washington, D.C.   20006-4623
17        202.289.1313

18        On behalf of the Defendants R&V Associates, Ltd., and
      Ronald L. Violi:
19
          Kerry Brainard Verdi
20        Verdi & Ogletree, PLLC
          1325 G Street, NW
21        Washington, D.C.   20005
          202.449.7703
22
          Stephen S. Stallings
23        Law Offices of Stephen S. Stallings
          310 Grant Street, Suite 3600
24        Pittsburgh, PA   15219
          412.322.7777
25
          Kristen Andrews Wilson
```

1    Steptoe & Johnson, PLLC
     1233 Main Street, Suite 3000
2    Wheeling, WV  26003
     304.231.0444
3    Proceedings recorded utilizing realtime translation.
     Transcript produced by computer-aided transcription.
4                         Tuesday Afternoon Session,

5                         June 25, 2019, 2:00 p.m.

6                         - - -

7              THE COURT:  I would ask the clerk to call the case.

8              THE CLERK:  This is the case of Louis Longo, et al.,

9    versus Wheeling Hospital, Inc., et al., Civil Action Number

10   5:19-CV-192.

11             Will the parties please note their appearance for the

12   record.

13             MR. KINSKEY:  May it please the Court, Greg Kinskey,

14   United States Attorney's Office, Northern District of West

15   Virginia.  I have with me also counsel for the government,

16   Rohith Srinivas from the Department of Justice, and AUSA Colin

17   Callahan from the Western District of Pennsylvania.

18             MR. CALLAHAN:  Good afternoon, Your Honor.

19             MS. POTTER:  Your Honor, also Sharon Potter on behalf

20   of the relator, Louis Longo, along with Amy Easton and Jeffrey

21   Dickstein, who have been admitted pro hac vice.

22             MS WILSON:  Good afternoon, Your Honor.  Kristen

23   Andrews Wilson on behalf of R&V Associates, Mr. Violi. Along

24   with me are Kerry Verdi and Stephen Stallings.  I'm also

25   admitted pro hac vice.

1          MR. CHERNENKO:  Your Honor, I'm Marc Chernenko.  I

2     appear for Wheeling Hospital.  And with me is Meena Sinfelt,

3     who has been admitted pro hac vice and also represents Wheeling

4     Hospital.

5          MS. SINFELT:  Good afternoon, Your Honor.

6          THE COURT:  Good afternoon.

7          All right.  Let me start, I note some of you are

8     admitted pro hac vice.  It is the requirement of this district

9     that nongovernmental attorneys pay a fee to the Northern

10    District of West Virginia and to pay a fee to the West Virginia

11    State Bar, which is required under our local rules.

12         I don't know whether everybody's done that or not.

13    Because of the short amount of time between this case being

14    scheduled for a hearing and all the pro hac vice requests

15    coming in, I just signed them, but I would warn you, I guess,

16    to be sure that both entities are paid so that we don't have

17    any problem revoking pro hac vice.  And we have two cases here,

18    and you need to pay a fee for each under our rules, so please

19    see that that's done.

20         Now, one question that strikes me, I've never had a

21    qui tam action where the government intervened in part.  What

22    does that leave me?  Am I operating then under two complaints?

23         MR. CALLAHAN:  Certainly, Your Honor.  Colin Callahan

24    on behalf of the government.  I think I can go ahead and

25    address that.

1          THE COURT:  Please.

2          MR. CALLAHAN:  So the scope of the case that the

3    United States is pursuing is obviously delineated in the

4    complaint and intervention that we filed at this point.  There

5    are circumstances, and it's permitted under sort of the

6    statutory scheme for qui tam suits, that a relator can pursue

7    additional claims or theories, in theory.  The time for the

8    relator's counsel -- and they'll correct me if I'm wrong -- to

9    have served a copy of their complaint, if they had intended to

10   do so in this case, has come and gone.  And so the entire scope

11   of the case that exists right now is what is, in fact, detailed

12   in the United States' complaint and intervention.

13         THE COURT:  Does anyone disagree with that?  Okay.

14         That makes it easier.  The main reason that -- other

15   than to meet all of you -- that I scheduled this is the issue

16   of the deposition of Mr. Violi.  I have read all the

17   submissions.  I have read the medical report which was

18   submitted in camera.  I'm prepared to rule, but if anyone would

19   like to be heard before I do, now's the time.

20         MR. CALLAHAN:  Well, Your Honor, I really want to

21   answer any questions the Court may have as much as anything.  I

22   don't want to stand up here and waste your time by repeating

23   what's in the briefs, which I think are set forth in motion

24   fairly well.

25         Obviously, the case law has changed somewhat here,

 1   and we are now in a different district than when we briefed the

 2   motion and when it was previously argued.  I think the standard

 3   is still essentially the same.  I think it's well-vested viewer

 4   discretion as to how to handle this, but the government stands

 5   ready to answer any questions Your Honor may have on the issues

 6   that are raised there.

 7           THE COURT:  What's the scope of your intended

 8   examination?

 9           MR. CALLAHAN:  Sure.  So I think that because the

10   purpose here, Your Honor, is to preserve testimony for trial,

11   it's not a circumstance where we could sort of clearly

12   delineate different aspects of the case.  At the same time,

13   we're mindful there are serious health issues here, and if it

14   would be useful to make accommodations for Mr. Violi to perhaps

15   shrink the total time that we were going to take the deposition

16   and reserve the rest, I think we're open to that conversation.

17           We're also open to structuring the deposition over a

18   number of days, if that would ease some of the medical

19   constraints, but I don't think we have a subject matter

20   specific distinction to propose at this time.

21           THE COURT:  All right.

22           MR. DICKSTEIN:  Your Honor, Jeffrey Dickstein on

23   behalf of Louis Longo.  I might add, because of the other case

24   which has now been transferred by Judge Stamp to Your Honor,

25   there may be some additional issues.  We think there's huge

1   overlap, and we can agree or disagree on whether that's true,

2   but to the extent that Mr. Violi is central to both of those

3   lawsuits, the examination would include the issues raised in

4   the other case, the new case transferred to you.  So that's

5   just in response to your question about the scope.

6          We've asked -- the outstanding stay motion that we

7   filed in the other court, in Judge Stamp's court, that's

8   pending, although we have a new scheduling order.  I would just

9   respond in saying there might be additional issues beyond that

10  limited to the government's qui tam complaint.  We'd like to do

11  it one time.  We understand the infirmity of Mr. Violi.  Let's

12  do it once.

13         MS. VERDI:  Good afternoon, Your Honor.  Kerry Verdi

14  on behalf of Mr. Violi.  And I have a few points that I would

15  like to make for the Court.

16         The first, I'm going to address what Mr. Dickstein,

17  just -- the argument Mr. Dickstein just made.  Mr. Dickstein is

18  not before the Court on this motion.  This motion was filed

19  only on behalf of the government.  The case that Mr. Dickstein

20  is addressing is a wholly separate case and is not one in which

21  I'm a lawyer.  I have not entered an appearance.  That is

22  Wheeling Hospital against Louis Longo.  So if he wants to file

23  a separate motion in that action, then I would suggest that he

24  do so, but I don't think it is proper for him to make that

25  argument before this Court today.  Certainly, as relator's

1   counsel, had he wanted to join in on the government's motion,

2   that was his right.  He did not do so.  So that is point number

3   one.

4           The second point is I would -- just to bring you up

5   to speed, in preparation for today's hearing I followed up with

6   the medical provider with whom you have -- from whom you have a

7   letter, and there is no update to provide.  There has been no

8   substantial change from the letter that you have received with

9   respect to Mr. Violi's health.

10          And the third point that I would raise to you is you

11  asked Mr. Callahan about the scope of Mr. Violi's deposition,

12  and I think in addition to his health issues, which you are

13  aware of from the in camera submission, the scope is the second

14  issue before the Court that was addressed in Wheeling

15  Hospital's brief that was adopted by Mr. Violi in our brief,

16  and I did, in preparation for today's hearing, look at the case

17  law for this jurisdiction, and in the case of *Michael v. Estate

18  of Kovarbasich*, which is a 2015 decision out of this court,

19  when asking for expedited discovery, an issue that the courts

20  need to look at is the breadth of the discovery that is

21  requested.

22          And the government simply said to you today that it's

23  to preserve his testimony for trial.  But if you look at the

24  complaint before you, and I won't go into all the detail, but

25  just, I think, one paragraph to highlight is paragraph 101, and

1   that complaint says that there are, quote, at least 36
2   physicians at issue.

3          To prepare Mr. Violi for a deposition in the way in
4   which the government is requesting, one in which a magistrate
5   would be present to rule on objections, until we have gotten
6   through initial disclosures and have a sense of the scope, it
7   is impossible to even prepare Mr. Violi, were he in any health
8   position to do so, for a deposition that would address at least
9   36 physicians.  We have a right to know the scope of the
10  government's case.  And there's case-specific case law when it
11  comes to qui tams in particular that specifically does not
12  allow for discovery to be a fishing expedition.

13         And it continues to be our position that Mr. Violi is
14  certainly not able at this point in time to give a deposition,
15  and hopefully at some time when he would be, the contours of
16  this case need to be delineated.  We have to be through the
17  motions to dismiss, initial disclosures, which will be done by
18  August 15th per the Court's order, so that we understand what
19  the scope of that deposition would be and it doesn't turn into
20  an impermissible fishing expedition, contrary to both the law
21  of this jurisdiction and qui tam law in general.

22         Thank you, Your Honor.

23         MR. CHERNENKO:  We have nothing to add, Your Honor.

24         MR. CALLAHAN:  I could just address the points that
25  were raised by counsel, Your Honor, if that's okay.

1        In terms of the current health of Mr. Violi and any

2   update that counsel may be providing ex parte to the Court, I

3   can't speak to those issues, Your Honor, obviously.  Your Honor

4   may well be aware -- I suspect you are -- that when we were in

5   front of Judge Horan arguing this motion previously, one of her

6   suggestions had been -- I thought it was a wise one -- that

7   Mr. Violi's counsel and he consider making that information

8   available to -- on a very limited basis, to attorneys for the

9   government's side, literally in a room where we would view it,

10  so that we would have a better sense of exactly what we're

11  dealing with.  We were amenable to do that.

12       Unfortunately, it was not something that we were able

13  to reach agreement on, so I simply can't speak to the condition

14  of Mr. Violi presently, other than I can tell you we've been --

15  it's been represented to us that since we first tried to take,

16  during the course of this investigation in July of 2018, we've

17  been told that a variety of different health conditions which I

18  gather have worsened over time, have prevented him from

19  testifying.

20       We first raised this issue after it coming to light

21  there was some worsening conditions in April of 2019.  We were

22  told at that time that for at least a three-month period

23  Mr. Violi was going to be unavailable.  Obviously, we find

24  ourselves here nearly in July, and the representation is that

25  hasn't changed.  I'm not suggesting that I doubt that in any

1   way.  I'm just obviously at a bit of a disadvantage, Your

2   Honor, so I can't speak to that.

3           In terms of the scope issue that Ms. Verdi raises, I

4   have a very different reading of what the case law is talking

5   about there.  The cases that have addressed this issue within

6   the Fourth Circuit generally and nationwide have generally

7   viewed with some disfavor circumstances where the requested

8   discovery isn't tailored to the reason for the discovery.  And

9   so circumstances where a preliminary injunction hearing is the

10   predicate for the request and where the discovery request

11   itself is much broader than would be necessary to prepare for

12   that preliminary injunction would be one example.

13           Here the entire reason that we think that it is

14   important to try and take this deposition testimony early --

15   and I would just add that is not our preference.  This is

16   simply the least bad option available, given some of these

17   concerns.  I would much rather take this deposition in the

18   normal course, where I have the benefit of additional

19   discovery.  But because we have very real concerns that that

20   may simply not be possible here, such that we would lose the

21   ability to preserve that testimony at all for somebody who is a

22   key witness in this case, who is a named defendant themselves,

23   who is, until very recently, the CEO of a second named

24   defendant, and who is one of two principals of the third and

25   final defendant in this case, the idea we may lose that

1    testimony, I think, is a compelling reason.

2           And obviously, a single deposition without requesting

3    document discovery and not seeking any depositions of anybody

4    else, in my view, is well-tailored to the reason for the

5    request itself.  And I think that's what the case law speaks of

6    in terms of the scope of the discovery request itself.

7           So I did want to address those points.  In terms of

8    the health issues going forward, we obviously defer to Your

9    Honor's judgment in terms of where Mr. Violi is and what he can

10   ultimately do.  Judge Horan had obviously ordered that

11   continuing updates be provided.  We think that's appropriate.

12          And more than anything I guess we just feel, frankly,

13   Your Honor, that any information that you feel that you need to

14   balance Mr. Violi's physical condition with I think the very

15   real countervailing considerations of the United States in this

16   case to preserve that testimony, we think you should have it.

17          And so the proposal that defendants have made in this

18   case where the Court would mechanically order a deposition 30

19   days after a physician had cleared it struck us as perhaps too

20   mechanical.  And so a fluid circumstance where you have

21   whatever information you need and at an appropriate time would

22   order the deposition to go forward would be what we would

23   respectfully submit would be appropriate.

24          If you don't have any questions, I'll go ahead and

25   sit down.

1          THE COURT:  Sit down.

2          MR. CALLAHAN:  Thank you, Your Honor.

3          THE COURT:  All right.  The deposition of Mr. Violi

4  will proceed.  I have some ground rules that I am going to

5  impose, and those will be in effect unless some alternative is

6  agreed to by all the parties.

7          First of all, the reasons it will proceed is

8  Mr. Violi is a critical witness in this case.  The deposition

9  was requested in the summer of 2018.  He was employed through

10  May of 2019, yet was not offered up for deposition.

11          I've reviewed the medical report that was provided to

12  me in camera, which was from Mr. Violi's urologist, who I deem

13  not the best person to have made such a report.  So the

14  deposition is going to proceed.  It will proceed at two hours

15  per day, and that two hours does not include breaks.  It will

16  proceed on two nonconsecutive days per week, starting at least

17  by the week of July 8.

18          The deposition will be taken at Mr. Violi's home.

19  There will be one attorney for Mr. Violi and one attorney to

20  take the deposition.  No other attorneys will be present.

21  Transcripts to be made available quickly, and each side will be

22  given opportunity to take -- to ask questions, but I'm not

23  going to have Mr. Violi's home cluttered by a bunch of people.

24  When it's your turn, you'll have the transcript and you can ask

25  what you need to do.

1          I don't want any general discovery.  If I see a

2     question that wants to know where Mr. Violi went to high

3     school, somebody's going to be in trouble.  On the other hand,

4     if I detect some shenanigans on the part of the deponent, there

5     could be sanctions.

6          The party taking the deposition is required to

7     provide a copy to the Court as soon as they get it.

8          Given the fact that it's going to be in Mr. Violi's

9     home and Mr. Violi's home is in Pittsburgh, I can't make a

10    magistrate judge go to the house and sit around.  I'm not

11    available the first week, but after that week I will be

12    available.  Magistrate Judge Jim Mazzone will be available.  If

13    there's an issue, call us.  We'll be glad to take your call.  I

14    won't say we'll be glad to take your call.  We'll take your

15    call.

16          Questions?

17          MS. SINFELT:  Your Honor, Meena Sinfelt on behalf of

18    Wheeling Hospital.  Wheeling Hospital has concerns about

19    privilege issues that may arise and how Wheeling Hospital may

20    assert its privilege if it is not present during --

21          THE COURT:  What privilege?

22          MS. SINFELT:  Mr. Archer is the general counsel.  In

23    the complaint there are specific paragraphs which relate to

24    discussions between Mr. Archer and Mr. Violi, and we have

25    concerns that the government may ask questions about those.

1          THE COURT:  And you're afraid Mr. Violi won't assert

2    the privilege.  Is that --

3          MS. SINFELT:  I believe that Mr. Violi -- it's

4    Wheeling Hospital's privilege.  I'm not sure that his counsel,

5    on behalf of him personally, is able to assert it without us

6    there.  If we can come to some agreement, then that's fine, but

7    I don't believe that they have standing to do that without us

8    present.

9          THE COURT:  Okay.  You had a comment.

10         MS. VERDI:  I was just going to say, Your Honor, two

11   things.  First, that as Mr. Violi's personal counsel, we would

12   not object, obviously, to having counsel from the hospital

13   present as well, since he was their CEO.

14         THE COURT:  You say you do object.

15         MS. VERDI:  No, I do not.  I would also say, while

16   Ms. Sinfelt didn't raise it, I think the hospital probably has

17   an absolute right to be there as a named defendant, but there

18   are those concerns in terms of privilege that I may not be in

19   the best position to assert on behalf of -- I can't assert on

20   behalf of the hospital.  I don't represent the hospital.

21         Two other issues.  One would be the total hours of

22   which you are -- I assume is still the seven hours total for

23   his deposition?

24         THE COURT:  No.  This deposition, it's only going to

25   be four hours a week.  We're going to go till it's done.

1          MS. VERDI:  The other question I would ask, I

2    understand that you'd said that it was to begin the week of

3    July 8th.

4          THE COURT:  Yes.

5          MS. VERDI:  I am aware of a treatment schedule and

6    testing that is to be prior to that time, and I would ask that

7    we move it to the week -- the week after July 8th to

8    accommodate for his health.  We will not be able to meet with

9    him prior to that, given some things that will be occurring

10   between now and then.

11         THE COURT:  Any objection to starting the week of the

12   15th?

13         MR. CALLAHAN:  Your Honor, if it's okay, perhaps

14   counsel can compare schedules and quickly get this set for a

15   time period that works for everyone.  Bluntly, my wife will

16   murder me if I offer up an opinion on an exact date that week

17   when I'm scheduled to be in Maine, but we will make it happen

18   on the governmental side of things.

19         THE COURT:  Okay.  As I said at the beginning, unless

20   agreed to by the parties, you all can fool with it as you feel

21   necessary.  And I will allow one representative from Wheeling

22   Hospital to attend.

23         MR. CALLAHAN:  A couple points of clarification, Your

24   Honor, if I may.

25         We had proposed a video deposition.  Is that

1    acceptable to the Court?  The concern, obviously, is if a jury

2    is hearing a case at some point, there are nonverbal things

3    that can be rather important.

4            THE COURT:  Yeah, I'll allow video.

5            MR. CALLAHAN:  Thank you, Your Honor.

6            And I guess if it helps to clarify things, we can

7    also discuss it with counsel, but in the event that R&V is

8    comfortable and Mr. Violi is comfortable perhaps allowing two

9    government attorneys to attend, we would not have an objection

10   to having both Wheeling Hospital and R&V present there.

11           THE COURT:  We're going to have Wheeling Hospital

12   and -- one counsel from Wheeling Hospital, one counsel from

13   R&V, and one counsel from the government.

14           MR. CALLAHAN:  Very good, Your Honor.  Thank you.

15           MR. CHERNENKO:  Your Honor, with respect to the pro

16   hac requirements of local counsel, for purposes of the

17   deposition, would that be waived?  I think the rules require

18   that local counsel be present.

19           THE COURT:  Obviously.

20           MR. CHERNENKO:  Thank you.

21           MS. VERDI:  And Your Honor, one last point I think is

22   important to put on the record.  It's touched upon in the

23   letter that you received from Mr. Violi's treating physician.

24           Because of -- I have to be careful about how I phrase

25   this.  I don't want to disclose any of Mr. Violi's health

1    condition, but because of where he stands right now, as is

2    touched on, there is a very real possibility that some of the

3    questions and the things that may be asked of him he simply is

4    not going to remember at this time, and I need to put that on

5    the record.

6              I've had certainly some discussions with him, given

7    what he's going through at this time, and I don't want that to

8    be taken as shenanigans on the part of my client or

9    gamesmanship simply because of what he is going through --

10   there are -- it's difficult because of the constraints, but

11   there are -- certainly there are going to be some topics that

12   he just simply may not recall because of where he is right now

13   mentally and physically.

14             THE COURT:  You've put that on the record.

15             MS. VERDI:  Thank you.

16             MR. DICKSTEIN:  Your Honor, Jeffrey Dickstein for

17   Louis Longo.  I understand that we're not here on the other

18   case, but I don't want to burden the Court and Mr. Violi with

19   coming back to say there are limited questions in that case

20   that may not apply to this case.  And we'd like an opportunity

21   on a very limited basis to question Mr. Violi at one time so

22   we're not -- he doesn't have to go through this again.  We

23   haven't filed a motion in that case, but I just want to make

24   the Court aware of our need to do that at some point.

25             THE COURT:  I'd suggest you file a motion in that

1   case and I will address that when we see how this works out.

2   But I'm giving the government first bite at the apple.

3           MR. DICKSTEIN:  Yes, sir.

4           THE COURT:  Anything else?

5           MR. KINSKEY:  Nothing else, Your Honor.

6           MS. SINFELT:  Just one second, Your Honor, if we

7   could.  Your Honor, if we may, the government has referred to

8   in its complaint that they would enter into a protective order

9   and give us some information that they withheld in their

10  complaint.  I don't know if we would be able to get that

11  information before the deposition, or if we would be getting

12  any information to narrow or at least get any information about

13  what the scope of their deposition will be so we may be able to

14  defend our CEO and our case so as to not be prejudiced at

15  trial.

16          MR. CALLAHAN:  Your Honor, I can address that.  The

17  reference to the need for a protective order for a very limited

18  set of information is simply PII that relates to sample claims

19  that are referenced, so the names of particular patients.  I

20  don't think that's going to be a focus of deposition topics.

21  It's something that we will certainly get to.  But it's simply

22  patient-identifying information for the sample claims which are

23  otherwise well delineated in the complaint and set forth.

24          THE COURT:  Okay.  He says that's not going to be a

25  topic of the questions, but there was reference made to 36

1  physician contracts.  I don't recall those being -- a list of

2  the 36 being in your complaint.  Is that correct?

3          MR. CALLAHAN:  The complaint identifies a number

4  of --

5          THE COURT:  It does, but I didn't get to 36.

6          MR. CALLAHAN:  I would have to go back and look at

7  the actual complaint, Your Honor, the honest to god truth, but

8  let me make a larger point that may address the issue raised by

9  Ms. Sinfelt.  There are particular contractual provisions that

10  we think are problematic, which appear to be the exact same

11  contractual provisions which reappear over and over again in a

12  number of different contracts.  We have good reason to think

13  that there are 36 or so of those, may well be more, but it's

14  the same contractual provision, at least according to some of

15  the investigative testimony that we've taken.

16          So it's not as if the goal here is to walk through

17  every single physician who has had this contractual provision.

18  It's to talk about the contractual provisions with some

19  examples.

20          THE COURT:  Okay.

21          MS. SINFELT:  Your Honor, and I think the government

22  just pointed out our exact concern.  He just said, may well be

23  more.  And if they're going to take and preserve testimony for

24  trial and then amend their complaint or add more claims, I

25  think that Wheeling Hospital has a right to be put on notice of

1   the actual claims.

2         THE COURT:  If they don't know who they are yet, it's

3   pretty hard to.

4         MS. SINFELT:  I don't believe that Mr. Callahan was

5   saying that.  He just said, or more.

6         MR. CALLAHAN:  Your Honor, I think the complaint

7   speaks for itself.  We've alleged systematic fraud, and so

8   we've provided examples, which is typically what we do in these

9   cases and which courts across the country have ruled is

10  sufficient for pleading purposes.  I don't know the names of

11  every person who has a contract like that.  That's what

12  discovery is for.

13        THE COURT:  But you do have a list of 36.

14        MR. CALLAHAN:  We do, Your Honor.  Page 27 of the

15  complaint lists examples.  Those are the ones we've listed by

16  name.  And I don't remember a reference in the complaint to 36.

17  There may be.  If it is, it relates to a spreadsheet that

18  Wheeling Hospital provided to us during the course of the

19  investigation.

20        THE COURT:  Well --

21        MR. CALLAHAN:  Which we can reproduce to them that

22  single spreadsheet.

23        THE COURT:  I want them to know the 36 names.

24        MR. CALLAHAN:  We'll make sure they do, Your Honor.

25        MS. SINFELT:  Thank you, Your Honor.

1          MS. VERDI:  One final request in trying to limit

2     the -- determine the contours of this in this deposition in

3     this case, I would request that the judge order that initial

4     disclosures be made prior to the start of the deposition.

5          THE COURT:  Can you do it?

6          MR. CALLAHAN:  We're going to start the week of the

7     8th, Your Honor.  I think that would be a very challenging sort

8     of thing to put together.

9          THE COURT:  When are you supposed to be in Maine?

10         MR. CALLAHAN:  I leave the 12th, Your Honor.

11         THE COURT:  For?

12         MR. CALLAHAN:  A week.  We return on the 20th.

13         THE COURT:  So you don't want to do it the week of

14    the 8th because of some treatment.

15         You don't want to do it the week of the 15th because

16    of your vacation, which is a valid -- since I'm leaving day

17    after tomorrow, it's a very valid point.  So okay.  Let's aim

18    at starting the depositions the week of the 22nd, but I want

19    your disclosures in by the 15th.

20         MR. CALLAHAN:  That seems reasonable, Your Honor.

21    Thank you very much.  And that would be all parties'

22    disclosures exchanged by the 15th?

23         THE COURT:  No.  Just yours.

24         MR. CALLAHAN:  Understood, Your Honor.  Thank you.

25         THE COURT:  Are we done here?

1            MR. CALLAHAN:  Nothing further for the United States,

2   Your Honor.

3            THE COURT:  All right.  Thank you.

4            (Proceedings concluded at 2:34 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                         CERTIFICATE

 2           I, Cindy L. Knecht, Registered Professional Reporter

 3   and Official Reporter of the United States District Court for

 4   the Northern District of West Virginia, do hereby certify that

 5   the foregoing is a true and correct transcript of the

 6   proceedings had in the above-styled action on June 25, 2019, as

 7   reported by me in stenotypy.

 8           I certify that the transcript fees and format comply

 9   with those prescribed by the Court and the Judicial Conference

10   of the United States.

11           Given under my hand this 15th day of July 2019.

12                               /s/Cindy L. Knecht

                                 _____
13                               Cindy L. Knecht, RMR/CRR
                                 Official reporter, United States
14                               District Court for the Northern
                                 District of West Virginia
15

16

17

18

19

20

21

22

23

24

25
```